UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PETTER INVESTMENTS, INC.

        Plaintiff,

v.                                          Case No. 1:07-CV-1033

HYDRO ENGINEERING, INC., and          HON. GORDON J. QUIST
HYDRO ENGINEERING
EQUIPMENT & SUPPLY CO.

        Defendants.
_____/

## OPINION

Petter Investments, Inc. ("Petter") sued Defendants Hydro Engineering, Inc., and Hydro Engineering Equipment and Supply Co., LLC (collectively, "Hydro") for infringing Petter's patent, U.S. Patent No. 6,021,792 (the "'792 Patent"). Hydro counterclaimed for infringement of its patents, U.S. Patent Nos. 6,799,591 and 7,258,749 (the "'591" and "'749" Patents, respectively). The Court has already dismissed Petter's claims against Hydro. Hydro filed a series of summary judgment motions addressing various defenses Petter has raised to Hydro's counterclaims. Hydro requests summary judgment on Petter's defenses of indefiniteness under 35 U.S.C. § 112 (docket no. 200), anticipation based on the Kitano application (docket no. 202), anticipation and obviousness based on Petter's '792 Patent (docket no. 204), obviousness based on the Power River disclosure (docket no. 207), and Petter's new matter, non-enablement and best mode defenses (docket no. 213).

Hydro's motions for summary judgment on Petter's defense of indefiniteness (docket no. 200) and Petter's new matter, non-enablement, and best mode defenses (docket no. 213) are unopposed.

# I. Background

The facts and the summary judgment standard are well-known to the parties and the Court and need not be recited here. Invalidity must be demonstrated by clear and convincing evidence. *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988). Thus, the Court will grant summary judgment only if it determines that no rational jury could find that Petter has established invalidity by clear and convincing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56, 106 S. Ct. 2505, 2514 (1986). Clear and convincing evidence "lies somewhere between 'beyond a reasonable doubt' and a 'preponderance of the evidence,' . . . [and] has been described as evidence which produces in the mind of the trier of fact 'an abiding conviction that the truth of the factual contentions are highly probable.'" *Buildex*, 849 F.2d at 1463 (internal quotations omitted).

Petter and Hydro sell wash fluid containment systems for pressure washing large equipment such as automobiles and bulldozers. Wastewater is captured, filtered, and re-circulated through the pressure washer or discarded. Petter's '792 Patent relates to a wash pad covered by a grate on which the item to be washed is placed. Wastewater drains through the grate into a collection trough beneath the pad, and is suctioned by a vacuum pump to a series of filters. According to the '792 Patent, one of the advantages of the invention is that the wastewater is filtered before it reaches the pump, which prevents the pump from being clogged by debris. Upon filtration, the water is directed to a tank for storage or reuse.

Hydro's '591 Patent describes a wash pad consisting of an impervious top comprising a series of ridges and grooves. The ridges support the weight of the item being washed while the grooves permit wastewater to drain into a trough on an edge of the pad. A sump pump pumps the water from the trough to a series of filters, and afterwards to a storage tank. One of the '591 Patent's advantages over the prior art in the field is that its side trough permits easy access for the elimination

of solid waste.  Hydro's '749 Patent describes a method of use of the invention claimed in the '591 patent.

## II.  Analysis

### A.  Indefiniteness of the '591 Patent Under 35 U.S.C. § 112

Hydro asks the Court to enter summary judgment that the claims of the '591 Patent are not invalid for indefiniteness under 35 U.S.C. § 112.  In its supplemental response to Hydro's interrogatories ("Supplemental Response") Petter alleged that some of these claims are hybrid claims which recite both an apparatus and method limitations.  (Docket no. 222-5 at 3-10.)  Claim 1, for instance, recites ridges and sloped grooves:

> the ridges structurally supporting the weight of a vehicle and other items to be cleaned and the sloped grooves accommodating immediate flow of cleaning liquid and debris removed from the vehicle along the slope in the grooves to prevent accumulation of debris on the pad.

('591 Patent col.6 ll.44-48.)  Claims 13 and 15-17 also recite structural components and describe the functions performed by those components.

A claim is indefinite "if it does not reasonably apprise those skilled in the art of its scope." *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005).  A claim is indefinite only if it "is insolubly ambiguous, and no narrowing construction can properly be adopted." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338-39 (Fed. Cir. 2003).  A claim is insolubly ambiguous if and only if its meaning cannot be discerned through reasonable efforts of claim construction. *Exxon Research and Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).  Furthermore, a claim which recites "both an apparatus and a method of using that apparatus" is indefinite.  The IPXL court explained:

> As a result of the combination of [apparatus and method], a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be

3

liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus.

*IPXL Holdings*, 430 F.3d at 1384.

The claims of the '591 Patent do not combine apparatus and method. Language in the '591 Patent such as "ridges structurally supporting the weight of the vehicle," "sloped grooves accommodating immediate flow of cleaning liquid," and a "storage trough ... into which essentially all of the debris and ... used wash liquid run" further describes the associated apparatuses by illustrating the functions they perform. It does not describe a method of using the associated apparatuses. The '591 Patent does not claim "ridges" and a method whereby the user structurally supports the weight of the vehicle; it claims "ridges" and explains that a characteristic of the "ridges" is that they are capable of "structurally supporting the weight of the vehicle." The '591 Patent is not indefinite for simultaneously claiming an apparatus and a method.

Petter also contends that the term "transversely directed" in claim 15 is insolubly ambiguous. The Court disagrees. "Transverse" means "lying or extending across or in a cross direction; cross." *Random House Dictionary of the English Language* 2013 (Stuart Berg Flexner ed., 2d ed. 1987). The "transversely directed sloped drainage corridors" described in claim 15 lie across the "impervious top" also described in claim 15. The subsequent language in claim 15 further elucidates that these "drainage corridors" run to a "trough" at one side of the "impervious top." "Transversely directed" is not indefinite.

## B. Anticipation By the Kitano Application

Petter contends Hydro's '749 Patent is anticipated pursuant to 35 U.S.C. § 102 by unexamined Japanese Patent Application No. H8-175342 (the "Kitano Application"). Anticipation "requires the disclosure in a single prior art reference of each element of the claim under

consideration." *Alco Standard Corp. v. Tenn. Valley Auth.*, 808 F.2d 1490, 1496 (Fed. Cir. 1986) (quoting *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1554 (Fed. Cir. 1983)). However, the anticipating reference need not explicitly "disclos[e] a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *Schering Corp. v. Geneva Pharms.*, 338 F.3d 1373, 1377 (Fed. Cir. 2003). The Kitano Application discloses a car wash apparatus and contains no method claims. Petter claims that Kitano anticipates the '749 Patent nonetheless, because use of the invention described in the Kitano Application inherently performs the methods claimed in the '749 Patent. Hydro argues that the Kitano Application does not disclose the apparatus described in the '749 Patent.

Much of the argument concerning the apparatus described in the Kitano Application deals with whether the Kitano Application discloses an elevated wash pad. Petter contends that it does. Petter also argues that the '749 Patent itself does not require that the wash pad be elevated. The Court concludes that the '749 Patent discloses an elevated wash pad, while the Kitano Application does not. Accordingly, the Court finds that there is no genuine issue of material fact as to whether the Kitano Application anticipates Hydro's '749 Patent.

The parties did not seek the Court's construction of the term "wash pad" in the '749 Patent. Claim 1 recites "a flat wash pad which comprises lower support structure which rests upon a ground or floor level surface and top structure spaced above the lower support structure, the top structure comprising an exposed liquid impervious top surface slightly above the ground or floor level . . . ." (Docket no. 10-3 col.6 ll.42-47.) Claim 2 recites "a flat wash pad which rests upon a ground level surface comprising a support base and a vehicle supporting top above the base . . . ." (*Id.* col.8 ll.3-6.) Claim 3 refers to an "impervious flat wash pad" and claims a method which includes "placing a solid debris-carrying vehicle on an exposed top impervious surface of the impervious flat wash

5

pad . . . ." (*Id.* col.7 ll.25-26.) Claim 5 refers to an "impervious wash pad comprised of a non-porous top element . . . ." (*Id.* col.8 ll.14-15.) Claim 4 depends from claim 3.

Claims 1 and 2 describe elevated wash pads. This elevation is implied by the claims' descriptions of a lower supporting surface and a top impervious surface. Claim 2 explicitly states that the pad "rests upon a ground level surface." Claim 1 states that it "rests upon a ground or floor level surface . . . ." Since the lower supporting structure rests on a ground level surface, the top surface must be elevated above ground level.

Claims 3 and 5 contain no explicit statement that the wash pad is elevated. However, both claims use the identical term "wash pad" to refer to the apparatus. "The usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). The Court believes that the implication that the wash pads in claims 3 and 5 are also elevated is supported by the references in those claims to an "exposed top impervious surface," (docket no. 10-3 col.7 ll.25-26), and a "wash pad comprised of a non-porous top element." (*Id.* col.8 ll.14-15.) These descriptions harmonize with the descriptions of the elevated wash pads in claims 1 and 2. The specification, which consistently refers to the wash pad as "elevated," also supports this construction. Furthermore, the Detailed Description of the Invention states that "the pad is placed on the ground . . . and is elevated above ground level so that the collecting trough is positioned between the surface and ground level. No excavation is required." (*Id.* col. 4. ll.12-16.)

The statement that the "collecting trough is positioned between the surface and ground level" is telling. Claim 3 states that spent wash liquid flows "vertically downwardly [from an edge of the top surface] through an opening in a top of and into a containment [tr]ough below the peripheral edge." Claim 5 contains an essentially identical statement. The most natural interpretation of these

passages, particularly in light of the remaining claims and the specification, is that the wash pad described in these claims is elevated. In the Court's judgment, the '749 Patent implicitly constrains the wash pads of claims 3, 4 and 5 to be elevated. *See Phillips*, 415 F.3d at 1321 (noting that "a claim term may be clearly redefined without an explicit statement of redefinition").

By contrast, the pad described in the Kitano Application is indubitably not elevated. (Docket no. 203-4 at 4.) The top surface rests at ground level. This is not surprising given that the invention is a car wash. Although the supporting structure is above the ground, it is below ground level as a portion of the ground has been excavated to make way for it. (*Id.*) According to Petter's definition, any structure that was not buried would be above ground level. The Court rejects this definition. Furthermore, the drain channel depicted in the Kitano Application is recessed, the result of additional excavation. (*Id.*) Simply put, the Kitano Application fails to disclose, either explicitly or implicitly, the structure, and thus the methods, of the '749 Patent.

## C. Anticipation By the Petter Patent

Petter contends that the '591 and '749 Patents are anticipated by Petter's '792 Patent. Hydro's patents generally disclose an impervious top. *See, e.g.,* docket no. 10-2 col.6 ll.42-43 ("an impervious undulating top comprising ridges and sloped grooves"); *id.* col.7 ll.29-31 ("an impervious top comprising . . . impervious ridge portions upon which . . . items are supported"); *id.* col.8 ll.9-12 ("an impervious low profile pad . . . comprising vehicle support areas and slightly lower liquid path-defining channels"); *id.* col.8 ll.22-29 ("flat impervious pad comprising: vehicle generally flat support structure exposed at a top of the impervious pad, for supporting a vehicle . . . [and a] gently sloped drainage structure below the support structure and exposed at the top of the impervious pad"). Much of the parties' disagreement centers on whether the impervious top must be a "top surface" or merely a "top section."

During claim construction, this Court construed "top" to mean "the upper, higher, or highest part, section, point or surface." Petter contends that Hydro is now bound by this definition of "top" and that Petter's '792 Patent discloses a top which satisfies this definition. "Top" appears in both Hydro's '591 and '749 Patents. It appears in those patents in two different contexts, one of them directional and the other, structural. The parties asked the Court to construe "top" as it appears in the following phrase of claim 1 of the '749 Patent: "disposing an opening at a top of perimeter containment trough." (Docket no. 10-3 col.6 ll.59-60.) The Court ruled that in this context, "top" was used in a directional or spatial sense. Petter has taken the Court's construction of "top" out of this context and attempts to apply it to the '591 Patent's use of the term in a structural context.

"Top" appears in a structural context in the '591 Patent, which recites in claim 1 a "pad comprising an impervious undulating top." (Docket no. 10-2 col.6 l.42.) Here, "top" is a noun which refers to the upper surface of the wash pad. By contrast, "top" as construed by the Court in claim 1 of the '749 Patent was solely a directional limitation. "Top" also appears in the '749 Patent in another context, e.g., in claim 1 which recites, "causing the spent wash liquid and debris to fall directly over the perimeter edge off the impervious top surface." The "impervious top" referred to in the claims of the '591 Patent is an abbreviated expression for the "impervious top surface" referred to in claim 1 of the '749 Patent.

So, "top" as construed by the Court in the phrase "disposing an opening at a top of perimeter containment trough" in claim 1 of the '749 Patent does not have the same meaning when used in the phrase "impervious undulating top" in the claims of the '591 Patent. In fact, when the parties exchanged claim terms they believed required construction, Petter proposed to construe "undulating top" as "an uppermost surface that is wave-like in appearance," while it sought to construe "top" in the phrase "at a top of perimeter containment trough" as "a structural component of the trough that

8

at least partially covers the trough." (Docket no. 241-3 at 3, 5.) In subsequent correspondence, Hydro and Petter agreed that "undulating" meant "wave-like" and that "undulating top" required no further construction. (Docket no. 241-4 at 2, 3.) Consequently, "top" as used in that phrase was never presented to the Court for construction.[1]

The Court concludes that "top" as used in "impervious undulating top" and similar phrases in the '591 Patent refers to the upper surface of the wash pad. The Examiner withdrew the Gross reference because Gross did not recite an impervious top *surface*. (Docket no. 205-6 at 11.) The Examiner's statement may reflect how one skilled in the art would understand a claim term. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). Despite Petter's arguments to the contrary, the Court finds that Petter's '792 Patent does not disclose an apparatus with an impervious top. Petter argues that its wash rack, consisting of a grate resting above a tray and a trough, has an impervious top section. Petter argues that even though wastewater drains through the grate, this "top section" is impervious because wastewater does not drain through the tray underlying the grate. The Court disagrees. Water does not drain through the top surface on which the item being washed rests in Hydro's patents. By contrast, water does drain through the grate on which the item rests in Petter's '792 Patent. Any wash pad containing a substructure which was not porous would have an impervious "top section" as Petter seeks to define it. Petter's tray may well be impervious, but the grate is not, and the grate, not the tray beneath it, is the "top" of the Petter wash pad.

The Court is similarly unpersuaded by Petter's argument that Petter's patent discloses "an impervious top with ridges and grooves." (Docket no. 230 at 9.) Relying on the Court's construction of "ridges" to mean the "top, upper or crest portions of the impervious top," Petter

---

[1] The Court has considered Petter's late-filed surreply brief, which Petter was granted leave to file on August 26, 2009.

contends that "the grating . . . disclosed in the Petter Patent satisfies the foregoing definition of ridge as it is a top or upper portion of the impervious top (section)." (*Id.* at 9.) The Court disagrees. The grate is a "top, upper, or crest portion[]" of Petter's wash pad. However, the Court's construction requires that the ridges be the upper portions of the "impervious top." Petter's grate is a top of its wash pad, but it is not an "impervious top" because the grate is not impervious. The tray beneath the grate may be impervious, but it is not a "top."

Petter also argues that the specification of the '792 Patent discloses that "the tray may include support members that are spaced 15 inches apart," and that these support members "channel water to the side trough" and comport with the Court's construction of "sloped grooves." The Court does not agree that the support members satisfy the Court's construction of "sloped grooves," which the Court construed as "channels or hollows in the impervious top deviating from the horizontal." The support members are elevated with respect to the surrounding areas of the tray, and thus are not "channels or hollows." Perhaps Petter meant to argue that the spaces *between* the support members constituted the "sloped grooves." The Court would reject that argument as well, because these recessed areas between the support members are not "channels or hollows *in the impervious top*." Even if conceived of as "channels or hollows," the spaces between the support members are not in the "top" of Petter's wash pad - they are beneath the grate which rests atop the support members. Accordingly, the Court finds that Petter's '792 Patent does not anticipate Hydro's '591 and '749 Patents.

### D. Obviousness in View of Petter, Gross, Pretnick and Kadono

#### 1. Obviousness Standard

Petter contends that Hydro's patents are obvious pursuant to 35 U.S.C. § 103(a) in view of Petter's '792 Patent, U.S. Patent No. 4,246,982 (the "Pretnick Patent"), U.S. Patent Application No.

US 2003/0205257 A1 (the "Gross Application"), and Japanese Patent Application No. S58-188740 (the "Kadono Application"). Obviousness is a question of law supported by findings of fact. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1007 (Fed. Cir. 2009). A patent is invalid as obvious if "the differences between it and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 663 (Fed. Cir. 2000) (internal quotations omitted).

The fundamental inquiry is "whether the prior art would: 1) have suggested to those of ordinary skill in the art that they should make the claimed composition or device, or carry out the claimed process; and 2) [] also have revealed that in so making or carrying out, those of ordinary skill would have a reasonable expectation of success." *In re Vaeck*, 947 F.2d 488, 493 (Fed. Cir. 1991) (citing *In re Dow Chem. Co.*, 837 F.2d 469, 473 (Fed. Cir. 1988)). The inquiry's execution comprises four considerations: 1) the scope and content of the prior art; 2) the differences between the prior art and the claimed invention; 3) the level of ordinary skill in the art at the time of the invention; and 4) secondary considerations of nonobviousness. *Graham v. John Deere Co. of Kansas City*, 333 U.S. 1, 17-18, 86 S. Ct. 684, 694 (1966). Secondary considerations of nonobviousness include commercial success, long-felt but unresolved need, prior art teaching away from the claimed invention, failure of others, copying, and unexpected results. *Ruiz*, 234 F.3d at 663. Lack of evidence of secondary considerations of nonobviousness does not weigh in favor of obviousness. *Miles Lab., Inc. v. Shandon, Inc.*, 997 F.2d 870, 878 (Fed. Cir. 1993).

Most inventions combine existing elements. Mere "[i]dentification in the prior art of each individual part claimed" is insufficient to establish obviousness. *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000). The prior art must teach, suggest, or motivate the specific combination of elements in the claimed invention. *Id.* Such teaching, suggestion or motivation may be explicitly found in

"statements in the prior art, the knowledge of one of ordinary skill in the art, or in some cases the nature of the problem to be solved." *Id.* It may also be implied by the prior art as a whole. *Id.* The prior art provides an implicit showing if the combined teachings, knowledge of one of ordinary skill in the art, and nature of the problem as a whole would have suggested the solution employed in the claimed invention to one of ordinary skill in the art. *Id.* In support of a finding of obviousness, the Court must articulate why "the skilled artisan, with no knowledge of the claimed invention, would have selected" and combined these elements as claimed. *Id.* at 1371.

### 2. The Relevant Prior Art

Petter's '792 Patent discloses a wash pad comprising a grate, with a tray and a trough beneath it. Support members which run the length of the wash pad support the grate. (Docket no. 96-2 col.3 ll.18-21.) The support members "channel the liquid to the trough." A vacuum pump, connected by a hose to a drainage fitting on the trough, sucks the liquid from the trough and through a series of filters. (*Id.* col.5 ll.7-8.) The '792 Patent notes that this arrangement provides several advantages over the prior art existing at the time, which utilized an in-ground sump pump or a mat and a vacuum boom. According to the '792 Patent, an in-ground sump pump is "very expensive to use, is not portable, [] provides no flexibility for expansion . . . [and] requires sophisticated monitoring and maintenance." (*Id.* col.1 ll.8-11.) A mat and vacuum boom are "easily punctured and require[] a smooth prepared surface, preferably with sloping. Such a system is slippery when wet and treacherous when oily or soapy." (*Id.* col.1 ll.14-17.)

The Gross Application describes a "ramp structure having a pair of parallel and spaced apart ramps," a primary collector trough "spanning across the opening between the ramps," (docket no. 205-11 ¶ 64), which collects "substantially all liquid and debris falling between the ramps," and a secondary collector beneath each ramp "spanning between respective sides of each ramp" which

12

collects "substantially all liquid and debris falling on the ramps." (*Id.*) A spray cart supported by the primary collector trough washes the vehicle's undercarriage.

The Gross apparatus contains a centrally mounted settling tank into which all water and debris collected by the primary and secondary collectors is directed. (Docket no. 205-11 ¶ 45.) The primary collector discharges directly into the settling tank. (*Id.* ¶ 56.) The secondary collectors are on the sides, beneath the ramps, and thus cannot by themselves empty into the centrally mounted settling tank. There is thus a diverter channel attached to each secondary collector. (*Id.* ¶ 46.) The diverter channel discharges into the settling tank. Each secondary collector is equipped with a flushing manifold which forces the material in the secondary collectors into the diverter channels, and thus, into the settling tank. (*Id.* ¶¶ 44-46.)

The Pretnick Patent describes a "car ramp and drip pan assembly for placement under parked motor vehicles to catch fluid and particle drippings." (Docket no. 205-10 col.3 ll.55-58.) The invention comprises "a planar rectangular tray for catching the drippings" and a "pair of elongated racks positioned parallel to the sides of the tray." (*Id.* col.3 ll.58-61.) A ramp at an end edge of the tray enables the vehicle to be driven easily onto the racks. (*Id.* col.3 l.64 - col.4 ll.1-2.) The racks elevate the vehicle wheels above the bottom of the tray so that they do not touch the drippings. (*Id.* col.3 ll.62-64.) The perimeter of the tray forms an upstanding flange, enabling the tray to contain the drippings. (*Id.* col.4 ll.47-49.) Pretnick writes that the prior art was difficult to clean and tended to skip when the vehicle was driven onto it. Pretnick aimed to overcome these challenges.

The Kadono Application describes an apparatus for washing automobiles. A series of cranes elevate the vehicle above a pit. The pit is surrounded by a platform on which workers may walk. (Docket no. 205-9 at 4.) The walking platform is placed on a 4-sided, enclosed base frame covered by outer panels. (*Id.*) A sharply sloped panel with wave-like grooves lies at the bottom of the pit,

supported by the base frame. This panel forms the floor of the pit. In a preferred embodiment, the floor consists of two panels which slope towards each other, forming a "v." (*Id.*) The two panels comprising the v-panel meet in the center to form a drainage channel. (*Id.*) Kadono states that the floor may take other shapes, such as an upside-down "v," or sloping in a single direction to the side of the floor. (*Id.* at 5.) A metal grate, supported by an upper frame, lies above this floor. (*Id.* at 4.) An automatic washer lies above this grate. (*Id.*) Cranes suspend the vehicle over the pit so that the vehicle may be washed by the automatic washer beneath it. (*Id.*) When operated, the automatic washer drives dirt and debris from the vehicle. (*Id.*) The wastewater and debris fall through the grate onto the floor surface. (*Id.*) Debris flows down the sharply steeped floor and is carried away by the water into the drainage channel. (*Id.* at 5.) Kadono notes that this effect keeps the floor free from accumulating debris. The Kadono Application does not describe the disposition of the debris that accumulates in the drainage channel.

### 3. Obviousness Analysis of Hydro's Patents in View of the Prior Art

In this Court's judgment, none of these references suggest, even implicitly, that one might wish to employ an impervious top surface which drains to an above-ground trough located at an edge of the pad. Petter, Gross and Pretnick were before the Examiner during prosecution. The Court agrees with the Examiner that these references do not teach or suggest an impervious top surface which drains to a side trough. Petter, however, argues that the Examiner considered "impervious top" to mean only an impervious top surface, but that this Court's construction of "top" comprises an "impervious top section" as well, raising an issue of fact as to whether the Hydro Patents are obvious over Gross. (Docket no. 230 at 13.) This argument is unavailing. First, as discussed thoroughly in Section C of the Analysis, Petter misconstrues the Court's construction of "top." Second, although this Court will not depart from the plain meaning of an unambiguous claim

14

to preserve its validity, it will attempt to construe ambiguous claims to preserve their validity "where the proposed claim construction is practicable, is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims." *Generation II Orthotics, Inc. v. Med. Tech., Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001). The Examiner distinguished Hydro's Patents from Gross because Hydro's Patents have an impervious top surface. (Docket no. 205-6 at 11.) If there is any ambiguity in "impervious top," it should, in a case such as this, "be resolved in a manner that would preserve the patent's validity." *Phillips*, 415 F.3d at 1327. This precludes Petter's proffered construction - "impervious top section" - which, despite Petter's insistence, this Court never selected.

Petter offers as proof of obviousness the claim that one customer removed the grating from a Petter wash pad, and placed his equipment directly on the pad's supporting rails. (Docket no. 230-7 at 4.) However, Petter does not aver that this apparatus was an embodiment of its '792 Patent. Petter admits that it was merely "a commercial product *similar* to the invention described in the Petter Patent." (Docket no. 230 at 12 (emphasis added).) Second, it appears that the customer removed the grate because it was defective, not because he was motivated to do so by the teachings of the prior art. "The customers had to replace the grating after a time because the grating can bend and buckle from continuous use with heavy equipment." (Docket no. 230-7 at 4.) That one modified a particular Petter wash rack in this fashion does not mean that Petter's '792 Patent suggests or teaches such a modification. For these reasons, this evidence falls short of the clear and convincing evidence required to support a finding of obviousness. Consequently, the Court rejects this argument that the Hydro Patents are obvious in light of Petter's '792 Patent.[2]

---

[2]The Court also notes that the wash rack Petter refers to is the Undisclosed Product whose untimely disclosure was addressed by this Court in a July 9, 2009, Order. (Docket no. 243.)

The Kadono Application was not before the Examiner. The floor structure in Kadono shares some similarities with Hydro's impervious top - both are sloped and contain undulating grooves. Although Kadono depicts its invention with a centrally located drainage channel, Kadono notes that the drainage channel could be positioned elsewhere, i.e. at the side. However, Kadono's floor is at the bottom of an elaborate structure. The vehicle in Kadono doesn't rest on any surface - it is held aloft by a crane. Kadono does not disclose an impervious top surface. Petter does not even assert that Kadono suggests, teaches or implies that a vehicle might rest on the floor surface itself. Kadono reveals no such suggestion, teaching or motivation. Such a suggestion, teaching or motivation, even if only implicit, is the *sine qua non* of obviousness. Furthermore, although Kadono's floor and Hydro's wash pad have undulating surfaces, Kadono's "wave-shaped flow grooves along th[e] slope" enable "thorough washing of the floor surface," whereas Hydro's ridges support the vehicle and elevate it, permitting water and debris to flow into the grooves, down the slope of the pad, and into the trough. Kadono, like the other references discussed here, uses a pervious support mechanism for the vehicle, allowing the water to fall below to other surfaces and structures which channel the flow of water and debris. In Hydro's patents, the very surface which supports the vehicle is impervious and channels the flow of water and debris.

Petter asserts that whether Kadono is merely cumulative to Petter's '591 Patent is a question of fact. Petter likewise asserts that "whether one of ordinary skill in the art would position the [Pretnick] trough at a side location" is an issue of fact. (Docket no. 230 at 14.) The Court disagrees. Petter has not shown that the prior art, in whole, in part, or in combination, teaches or suggests, even implicitly, the desirability of Hydro's configuration. Because Petter has offered no evidence demonstrating that a sufficiently skilled artisan would understand the prior art to teach or suggest the desirability of an impervious top surface which drains to an above-ground trough at an edge of

the pad, Petter has not made a *prima facie* case of obviousness. *In re Rouffet*, 149 F.3d 1350, 1355 (Fed. Cir. 1998) (*prima facie* case of obviousness requires that the references teach or suggest the combination in question). Furthermore, the references must provide a motivation for combining them. *Id.* at 1357. Petter has not demonstrated this. Hydro sought to overcome what it believed was a significant weakness of the prior art, that the troughs found in the prior art were difficult to access and clean because they were located beneath the supporting structure. (Docket no. 10-2 col.1 ll.47-51.) The cited references do not discuss this difficulty. Finally, the prior art must teach or suggest every element of the claimed invention. *Application of Royka*, 490 F.2d 981, 984 (C.C.P.A. 1974). The prior art cited does not do that. None of the references discloses an above-ground trough at an edge of the pad, and the only reference which could be conceived of as having an impervious top is Pretnick. Thus, no combination of the references cited discloses an impervious top surface with an above-ground trough at an edge of the pad. Because Petter has not established a *prima facie* case of obviousness, no material fact is at issue.

Consequently, the Court will grant Hydro summary judgment on Petter's defense of obviousness on the basis of Petter, Pretnick, Gross and Kadono.

### E. Obviousness in View of the Powder River Disclosure

Hydro requests summary judgment that its patents are not obvious in view of a prototype manufactured for Hydro by Powder River and allegedly sold by Hydro to United Rentals. The prior art Petter is asserting (the "Powder River Disclosure") was not timely disclosed in accordance with this Court's Case Management Order. On February 23, 2009, Petter sought to amend its prior art disclosures to include the Powder River Disclosure. (Docket no. 160.) Hydro filed this motion for summary judgment before the Court ruled on Petter's motion to amend. The Court denied Petter's motion to amend its prior art disclosures on July 21, 2009. (Docket no. 252.) The reasons for the

Court's decision are fully set forth in that Order.  Because Petter did not timely disclose this prior art in accordance with the Case Management Order, and because the Court denied Petter's motion to amend its prior art disclosures, Hydro's motion for summary judgment of obviousness in view of the Powder River Disclosure will be granted.

### F.  Petter's New Matter, Non-Enablement, and Best Mode Defenses

Hydro requests summary judgment dismissing Petter's new matter, enablement, and best mode defenses.  Petter has not opposed this motion.

### *1.  New Matter*

In its Supplemental Response, Petter argued that claims 1 - 14 of the '591 Patent are invalid because "claim 1's reference to 'immediate' flow was not described in the specification as filed either directly or indirectly ... and [it] was added a year later in conjunction with 'new' claims." (Docket no. 214-7 at 5.)  Whether an amendment introduces new matter is a question of fact. *Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech., Inc.*, 542 F.3d 1363, 1380 (Fed. Cir. 2008).  However, to survive summary judgment, Petter must raise a genuine issue of material fact which would enable a reasonable jury to find that Petter has established by clear and convincing evidence that Hydro's amendment introduced new matter.  It has not done so.

35 U.S.C. § 132(a) states that no "amendment shall introduce new matter into the disclosure of the invention."  Furthermore, a patent's specification must "contain a written description of the invention."  35 U.S.C. § 112, ¶ 1.  If an amendment alters the scope of a claim so as to "justify an assertion that it is directed to a different invention than was" originally claimed, the amendment improperly introduces new matter unless the "newly claimed subject matter was [adequately] described" in the original application.  *Agilient Tech., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1379 (Fed. Cir. 2009) (internal quotations omitted).  An adequate description "conveys with reasonable

clarity to those skilled in the art that, as of the filing date sought, [the applicant] was in possession

of the claimed invention." *Id.* (quoting *Vas-Cath, Inc. v. Mahurhar*, 935 F.2d 1555, 1563-64 (Fed.

Cir. 1991)). "The fundamental inquiry is whether the material added by amendment was inherently

contained in the original application." *Schering Corp. v. Amgen, Inc.*, 222 F.3d 1347, 1352 (Fed.

Cir. 2000).

During prosecution, Hydro amended its application, adding new claims 27-44. (Docket no.

214-4 at 1-7.) The Examiner noted that several new terms raised potential difficulties, but did not

object to the addition of the term "immediate." (Docket no. 214-5 at 3.) Hydro amended the claims

to address the Examiner's concerns. (*Id.*) Claims 27-29 and 31-44 were found patentable and

renumbered as claims 1-17. (Docket no. 214-6 at 5.)

Where, as was the case here, the Examiner allows an amendment without objection, there

is a heavy presumption that the amendment did not introduce new matter. *Commonwealth Scientific*,

542 F.3d at 1380. Upon consideration of Hydro's original application, which specified that the

invention "is configured to cause the fluid to flow to an edge of the surface to prevent buildup of

fluid, solids, or debris on the surface," (docket no. 214-2 at 5), and made numerous other references

to the flow of wastewater and debris, the Court concludes that water and debris would have naturally

flown "immediately" in the sloped channels described in the original application, and that Petter has

neither shown by clear and convincing evidence that the Examiner's allowance was incorrect, nor

raised any genuine issue of material fact.

### 2. Non-Enablement

Petter claimed in its Supplemental Response that all the claims of the '591 Patent are invalid

for lack of an enabling disclosure as required by 35 U.S.C. § 112, ¶ 1. Petter argued that the

specification "fails to teach how to prevent accumulation of debris on the pad." (Docket no. 214-7

at 7.) Hydro requests summary judgment of this defense. Enablement is a question of law which depends on factual findings. *Plant Genetic Sys., N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339 (Fed. Cir. 2003).

Petter quoted this Court's opinion construing the disputed claim term "ridges" in the '591 Patent:

> The effective removal of debris depends on other factors in addition to the width of the ridges and grooves, including the shape of the ridges, the degree and direction of the wash pad's inclination, the slipperiness of the surface and the nature of the debris. Furthermore, the dependence of the pad's effectiveness on the size of the ridges and grooves is one of degree; changing their width might make it more or less efficacious, but there is no discrete measure below which the debris does not flow at all, and above which it flows effortlessly. Modification of the pad's slope and coefficient of friction should allow it to remain reasonably effective through a range of ridge and groove widths.

(*Id.* at 8.) Petter argues that Hydro has not disclosed the optimal values of any of those factors which might impact the removal of debris. However, Petter has taken the Court's quote out of context. During claim construction, Petter had argued that the "ridges" claimed in the '591 must be narrow. The Court disagreed, and in explaining that there was no functional requirement that the ridges be narrow, listed other factors that might impact the flow of debris, permitting a range of efficacious ridge widths. The point was that the appropriate spacing of the ridges might vary as other characteristics of the wash pad were altered.

"Enablement is a legal determination of whether a patent enables one skilled in the art to make and use the claimed invention." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1371 (Fed. Cir. 2003). The specification need not eliminate all experimentation, but it must not require "unduly extensive" experimentation. *Id.*

The '591 Patent states that "[t]he surface is configured to cause the fluid to flow to an edge of the surface." (Docket no. 10-2 col.2 ll.25-26.) It instructs that including a "flange along the

edges other than those to which the fluid flows" may facilitate this. (*Id.* col.2 ll.28-29.) It further states that "the surface may be sloped slightly toward the desired edge." (*Id.* col.2 ll.29-30.) "A slope on the order of about one-eighth inch per foot is generally satisfactory." (*Id.* col.4 ll.52-53.) The '591 Patent teaches that an automatic trough cleaning system may be installed for automated removal of solids from the trough. (*Id.* col.5. ll.15-17.) It adds that "the washing equipment can easily be used to wash off solids that might remain on the surface." (*Id.* col.6 ll.26-27.) It also informs the reader that "an elevation of eight to ten inches above grade or ground level on which the pad is placed is sufficient to place a satisfactorily sized collecting trough." (*Id.* col.6 ll.6-9.) The '591 Patent is replete with information on how to keep the pad free of debris, and Petter has not presented any evidence, much less clear and convincing evidence, that the '591 Patent is invalid for lack of enablement. The Court finds that the '591 Patent is not invalid for lack of enablement.

### 3. Best Mode

The specification must "set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶ 1. Petter argued in its Supplemental Response that the '591 Patent is invalid because Hydro did not set forth the preferred spacing of the rails of the wash pad. (Docket no. 214-7 at 10.) Whether an inventor has disclosed the best mode for practicing his invention is determined by: 1) whether the inventor possessed "a best mode for practicing the invention" at the time the patent application was filed; and 2) whether the inventor's disclosure was sufficient to "enable one of ordinary skill in the art to practice the best mode." *Pfizer, Inc. v. Teva Pharm. USA, Inc.*, 518 F.3d 1353, 1364 (Fed. Cir. 2008). Whether a patent complies with the best mode requirement is a question of fact.

In its Supplemental Response, Petter argued that Hydro had discovered a particular rail spacing superior to all others. Petter quoted the Declaration of Kerry Smith:

> We and our California distributor continued for at least about two months to make numerous follow-up telephone calls and visits to ensure that the [prototype] system was and continued to work satisfactorily. Several changes, such as the addition of the covers over the collective troughs and spacing of the rails, were made from information obtained during the testing.

(Docket no. 214-7 at 10.)

"Only the claimed invention is subject to the best mode requirement." *AllVoice Computing PLC v. Nuance Commc'n*, 504 F.3d 1236, 1246 (Fed. Cir. 2007). Hydro argues that the '591 Patent claims ridges but places no limitation on their spacing, and that the spacing of the ridges is thus beyond the scope of the best mode inquiry. (Docket no.214 at 18.) However, the scope of the best mode inquiry includes not only the specific language of the claims themselves, but also on the *scope* of the claims. *Eli Lilly & Co. v. Barr Lab., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001) (extent of information an inventor must disclose depends on scope of claimed invention). The '591 Patent claims ridges of all widths and spacings. Were there an ideal ridge spacing, that spacing would be within the scope of the claims.

Petter's conclusion from the Smith Declaration that Hydro had discovered a particular rail spacing that was superior to all others is unwarranted. The prototype Petter refers to was developed to satisfy the customer's unique needs. The customer needed to process a substantially larger volume of solids than Hydro had heretofore encountered. (Docket no. 214-8.) Hydro was uncertain if its equipment would work under those conditions. (*Id.*)

This suggests, not that Hydro discovered a single, optimal rail spacing, but that the optimal configuration may depend on several factors, including the type of equipment being washed and the quantity and nature of the soil on the equipment. Drawing all reasonable inferences in Petter's favor, the Smith Declaration reveals only that Hydro found a particular rail spacing ideal for the conditions under which that prototype operated. The evidence does not demonstrate that Hydro

knew of a particular best mode for practicing its invention in general. Hydro is entitled to summary judgment on Petter's best mode defense because Petter has not established that a rational jury could find by clear and convincing evidence that the '591 Patent is invalid for failure to specify its best mode.

A separate Order will issue.


Dated:  September 8, 2009                          _____/s/ Gordon J. Quist_____
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE