UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PETTER INVESTMENTS, INC.

    Plaintiff,

v.                                                    Case No. 1:07-CV-1033

HYDRO ENGINEERING, INC., and         HON. GORDON J. QUIST
HYDRO ENGINEERING
EQUIPMENT & SUPPLY CO.

    Defendants.
_____/

## **OPINION**

Defendants, Hydro Engineering, Inc.'s and Hydro Engineering & Supply Co., LLC's (collectively "Hydro"), have filed a Motion for Summary Judgment of Infringement against Plaintiff, Petter Investments, Inc. ("Petter") for infringement of Hydro's patents, U.S. Patent Nos. 6,799,591 (the "'591 patent") and 7,258,749 (the "'749 patent"). In particular, Hydro seeks summary judgement that: (1) Petter's "water channel" wash pads infringe claims 1 and 15 of the '591 patent; and (2) Petter contributes to and induces the infringement of claims 2 and 3 of the '749 patent through its sale of side trough wash pads. For the reasons set forth below, the Court will grant Hydro's motion with regard to its claim of direct infringement as to claim 15 of the '591 patent and claims 2 and 3 of the '749 patent. The Court will reserve ruling on claim 1 of the '591 patent pending oral argument, to be held in conjunction with the final pretrial conference, on whether the top of Petter's water channel wash racks is undulating, or "wave-like." The Court will also grant summary judgment to Hydro on its claim of contributory infringement. Finally, the Court will reserve ruling on Hydro's claim of induced infringement pending oral argument.

## I. BACKGROUND

### A. Hydro's Patents

Petter and Hydro sell wash fluid containment systems for cleaning large equipment such as automobiles and bulldozers. In these systems, wastewater is captured, filtered, and re-circulated through a pressure washer or discarded. Past embodiments of such systems, commonly referred to as wash pads or wash racks, use a below-grade open tank structure or holding basin for collecting wash fluids and debris. A grate placed over the top of the tank serves as a support structure on which the vehicle or equipment is placed for washing. As the vehicle is washed, the wastewater drains through the grate into the basin.

Various portable wash pad systems were developed, which eliminated the problems associated with an in-ground sump pump and enabled the user to wash vehicles or equipment on any surface and at different slopes. Such systems still used the grate over tank or pan-type structure. Petter's patent, U.S. Patent No. 6,021,792, is an example of a portable wash pad system using a grate.

Hydro's '591 patent describes a wash pad consisting of an impervious top comprising a series of ridges and grooves – *i.e.*, no grate or pan type structure that the water and debris drips through. The ridges support the weight of the item being washed while the grooves permit wastewater to drain into a trough on an edge of the pad. A sump pump pumps the water from the trough to a series of filters, and afterwards to a storage tank. An advantage of the '591 patent over the prior art in the field is that its side trough permits easy access for the elimination of solid waste. Moreover, because the collecting trough is located to the side of the wash pad, debris may be cleaned from the trough during use of the wash pad. ('591 patent at Col. 2, ll. 60-67.) Hydro's '749 patent describes a method of using the invention claimed in the '591 patent wherein debris from the

vehicle or equipment is washed onto the top surface of the impervious pad and the spent wash fluid and debris are directed across the top of the impervious surface, over the edge of the pad, and into the side trough to be removed and disposed of without impeding the washing process. The '749 patent on Hydro's method claims was issued on August 21, 2007.

In early September 2007, Hydro and/or its counsel sent written notice to Petter that the use of its side trough wash pads would infringe the method claims of the '749 patent as well as the apparatus claims of the '591 patent. (Hydro's Br. Supp. Mot. Summ. J. Exs. D and E; Petter Dep. at 107-110, Hydro's Br. Supp. Mot. Summ. J. Ex. C.) Petter concluded that its wash pads did not infringe because the Hydro pad is flat and not sloped like Petter's pad; Petter's side trough does not have a top on it; and the surface of Petter's impermeable pad was not "undulated" because it lacked "bumps." (Petter Dep. at 109.)

Although Hydro asserts other claims in this litigation, for purposes of the instant motion it has selected two claims from each of its patents by which it seeks to establish infringement. Regarding the '591 patent, Hydro contends that Petter infringes claims 1 and 15. Claim 1 provides:

> 1. A low profile pad upon which vehicles having weight, including heavy vehicles, and other items are positioned and supported to remove debris from any desired external location thereof:
> the pad comprising an impervious undulating top comprising ridges and sloped grooves;
> the ridges structurally supporting the weight of a vehicle and other items to be cleaned and the sloped grooves accommodating immediate flow of cleaning liquid and debris removed from the vehicle along the slope in the grooves to prevent accumulation of debris on the pad;
> At least one trough at an edge of the pad into which the cleaning liquid and debris collectively flow and are temporarily stored, and from which stored cleaning liquid and debris are selectively removed, at one or more sites offset from and without reference with any cleaning taking place on the pad.

('591 patent at Col. 6, ll. 38-54.) Claim 15 provides:

> 15. A vehicle receiving pad comprising:
> an impervious top comprising: (a) spaced generally transversely directed impervious ridge portions upon which vehicles, including heavy vehicles, and other items are supported in load-transferring relation for exterior cleaning using a cleaning liquid; and (b) impervious generally transversely directed sloped drainage corridors disposed below the ridge portions into which used cleaning liquid and removed debris collectively flow, each drainage corridor being sloped toward at least one side of the pad;
> a trough into which the cleaning liquid and debris, discharged from the covering, collectively flow and are temporarily stored, so as to prevent any material debris accumulation in the drainage corridors and from which the liquid and debris can later be generally segregated and separately removed.

(*Id.* at Col. 7, l. 28 - Col. 8, l. 6.)

Hydro contends that Petter infringes claims 2 and 3 of the '749 patent. Claim 2 reads:

> 2. A method of low profile washing of vehicles comprising the acts of:
> placing a debris-ladened vehicle upon a flat wash pad which rests upon a ground level surface comprising a support base and a vehicle supporting top above the base, the top comprising an exposed top liquid impervious surface spanning continuous at a slight slope to at least one peripheral non-central pad edge;
> washing solid debris from the vehicle onto the top liquid impervious surface using wash liquid and causing the solid debris and wash liquid on the top impervious surface collectively flow across the top liquid impervious surface to and directly over the at least one peripheral non-central pad edge and thereafter vertically downward directly through an opening at a top of and into a containment trough disposed above the ground level surface and vertically directly below the at least one peripheral non-central pad edge so that the subsequent cleaning of debris from the containment trough does not interfere with continuing simultaneous vehicle washing.

('749 patent Col. 7, ll. 1-21.) Claim 3 reads:

> 3. A wash liquid and debris containment method comprising the acts of:
> providing an impervious flat wash pad;
> placing a solid debris-carrying vehicle on an exposed top impervious surface of the impervious flat wash pad;
> using wash liquid to remove the solid debris from the vehicle, such that spent wash liquid and removed solid debris are displaced first onto and second substantially horizontally across but not through the impervious flat wash pad to a non-central unobstructed peripheral edge of the impervious flat wash pad and third vertically downwardly through an opening in a top of and into a containment trough below the peripheral edge.

(*Id.* Col. 7, l. 22- Col. 8, l. 6.)

4

B.     **Prior Claim Construction**

On April 1, 2009, the Court entered an Order Adopting Proposed Claim Construction. (Docket no. 173.) In that Order, the Court adopted the proposed construction issued on February 5, 2009. (Docket no. 154-2.) The proposed construction construed the following disputed claim terms of the '591 patent: "ridges and sloped grooves" and "vehicle support areas." The Court also construed the following disputed claim terms of the '749 patent: "flat" and "top." Although other claim terms were in dispute, in response to the Court's December 17, 2008, Order, (docket no. 135), the parties represented that they believed these claim terms would most likely be dispositive of Hydro's counterclaims of infringement. (Docket no. 138.)

The Court construed "ridges" to mean "the top, upper, or crest portion of the impervious top," and "sloped grooves" to mean "channels or hollows in the impervious top deviating from the horizontal." The Court also rejected Petter's argument that these terms should be defined as "narrow" or "comparable in width." Regarding the '749 patent, the Court construed "flat" as "having a relatively broad surface in relation to thickness or depth." The Court found the term "top" to refer to a spatial location on the trough, construed as "the upper, higher or highest part, section, point or surface."

C.     **Petter's Products**

In 2006, Petter began selling wash pads with side troughs. Petter's side-trough wash pads have two general configurations: (1) those with "water channels," or sloped grooves; and (2) those without "water channels," or sloped grooves. In support of its motion, Hydro has submitted photographs and video evidence showing the structure and operation of each type of wash pad system.

Hydro provides two examples of Petter wash pads without water channels that infringe the '749 patent. These wash pads are located in Santa Fe, New Mexico and Winchester, Virginia. The photographs and videos show a piece of equipment situated on each wash pad. An employee of the customer sprays the equipment with a pressure washer, and the wash fluid and debris fall to the wash pad surface. The fluid and debris flow on the sloped surface toward and into a side storage trough located next to the pad. From time-to-time the employee uses the pressure washer to spray debris off the pad and into the trough. Matthew Petter explained the operation of this type of wash pad as follows:

> Q      If we look at the first page, 11042 [depicting the Winchester, Va. wash pad], you can see skid steer being washed off – or I don't know if it's skid steer –
>
> A.     Yeah, it is. Well, maybe – can't tell. But it's something like that.
>
> Q      It's something like that. And it's being sprayed off and you can see that you have that same impervious top on this wash pad, correct?
>
> A.     Yes.
>
> Q.     And the water is moving – it's – now you're putting this on typically a flat piece of ground or concrete pad, correct?
>
> A.     Close to it, yes.
>
> Q.     As close to flat as you can get. Correct?
>
> A.     Yes.
>
> Q.     And it's designed that way. It's sloped so that the water will drain into the side trough?
>
> A.     Yes. And you can see in.
>
> Q.     And you can see in the side trough here, the mud, and water that's collected in the side trough?
>
> A.     Yes.

> Q. Okay. And HE 1045 [Winchester wash pad photograph] you can see the operator of the power spray, spraying some of the mud off the impervious surface into the side trough, correct?
>
> A. Yes.
>
> Q. And that's the way they're designed, to push the mud off when you're done so when you bring something on to the support structure before washing it, you have a clean surface and the muck goes into the side trough where it can be cleaned out; is that fair?
>
> A. Yes.
>
> Q. Okay. There's nothing that prevents someone from cleaning out the side trough while someone is spraying off a piece of equipment, correct?
>
> A. No, I don't think so.

(Petter Dep. at 184-186.)

Hydro also presents photographs and video evidence of two Petter wash pads with water channels that infringe both the '749 patent and the '591 patent. These wash pads are located in Hutto, Texas and Tulsa, Oklahoma. The photographs of these wash pads and the videos depicting them in use show that they are essentially the same in structure and function as the Santa Fe and Winchester wash pads, with the exception of having water channels, or sloped grooves. Matthew Petter described the operation of these pads as follows:

> The equipment drives up onto the pad, as this crane has. The user washes the mud and oils off the equipment. It falls onto the pad. The pad slopes, I believe four and a half inches from the upper side to lower side, which causes the water to flow into the side trough. The side trough is the settling area and also a collection area. And there would be a suction point at the far end or at wherever the low point is. We would suck the water out of there. And then they would also drive in there with a skid steer and collect the mud that's left over from there and take it to some place and dry it for disposal.

(*Id.* at 205-06.) In other words, the wash fluid and debris fall from the equipment to the impervious surface of the wash pad and is directed over to the side trough either on the surface or through the water channels. (*Id.* at 206-07.)

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

As noted above, Hydro contends that it is entitled to summary judgment that Petter's water channel side trough wash pads directly infringe claims 1 and 15 of the '591 patent. Hydro further contends that it is entitled to summary judgment that Petter contributes to the infringement of the '749 patent under 35 U.S.C. § 271(c) and actively induces infringement of the '749 patent under 35 U.S.C. § 271(b) through its sale and installation of side trough wash pads, with and without water channels.

In its response, Petter asserts that its water channel wash racks do not directly infringe claims 1 or 15 of the '591 or claims 2 or 3 of the '749 patent because they lack the "impervious top,"

8

"undulating," and "accommodate immediate flow" limitations, as applicable. Petter also argues that none of its wash racks infringe claims 2 or 3 of the '749 patent because the language of those claims requires the wash pad by itself to automatically cause all of the debris and wash fluid to flow to the side trough during cleaning independent of the operator using a pressure washer to remove the debris to the side trough. Hydro points out that Petter never disputed infringement of the '591 patent or the '749 patent based on these claim limitations in the Joint Chart Disclosing Claims and Defenses filed on August 1, 2008. Hydro notes that Petter disputed infringement of claims 1 and 15 of the '591 patent based on the "ridges" and "sloped grooves" claim limitations and disputed infringement of claims 2 and 3 of the '749 patent based on the meaning of "flat" and "top." Thus, Hydro argues, the Court should refuse to consider Petter's newly raised and untimely defenses. While the Court acknowledges that it could decline to consider Petter's new arguments as waived, the Court will, address them on the merits, with the exception of the "undulating" limitation.

  A.  **Direct Infringement of the '591 Patent**

Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." In order "to find infringement, the accused device must contain 'each limitation of the claim, either literally or by an equivalent.'" *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1379 (Fed. Cir. 2008) (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005)).

Based upon its review of Hydro's photographs and videos of the Petter water channel wash pads identified as the Texas and Tulsa examples, the Court concludes that Petter's water channel wash pads directly infringe claim 15 of the '591 patent because they meet every limitation of that claim. Because the Court has questions about whether Petter's water channel wash pads have an

9

undulating top, it will defer ruling on claim 1 of the '591 patent pending oral argument, although the other claim limitations are met.

As noted above, Petter argues that its water channel wash racks do not infringe because they fail to meet three limitations of claim 1 and one limitation of claim 15. Petter first argues that its water channel wash racks are not impervious because its wash racks have a small gap between the water channels and the diamond plated surface that allows water to pass underneath the top of the wash rack. Petter supports this argument with a drawing depicting the gap on page 3 of its brief as well as with various photographs purporting to show that water penetrates underneath the top surface of Petter's wash racks. In addition, Petter submits an affidavit from Matthew Petter, who states that "there is a gap between the steel diamond plated sheet and the water channels" that "allows water to pass underneath the top of the wash rack." (Petter Aff. ¶ 4, Petter's Resp. Br. Ex. C.) Matthew Petter further states that the photographs on pages 4 and 5 of Petter's brief show water flowing through the gap and passing underneath the top of the wash rack. (*Id.* ¶¶ 5 and 6.)

### 1. **Impervious.**

The Court finds it unnecessary to construe the term "impervious" because its usage in claims 1 and 15 suggest that the ordinary meaning should apply. "Impervious" means "not permitting penetration or passage; impenetrable." *Random House Dictionary of the English Language* 960 (2d ed. 1987). Consistent with this meaning, the '591 patent distinguishes the claimed impervious wash pad from prior art, including Petter's patent, that used a grate to support vehicles over a collection tank, such that the fluid and debris washed from the vehicle flows directly through the large openings in the grate and into the tank below. ('591 patent Col. l, ll. 24-31, 52-58; Col. 2, ll. 23-27.) Hydro's invention "provides an elevated, substantially water impervious surface upon which items to be washed are positioned." (*Id.* Col. 3, ll. 63-65.) The claimed impervious "surface is configured

to cause the fluid to flow to an edge of the surface to prevent buildup of fluid, solids, or debris on the surface." (*Id.* Col. 2, ll. 25-27.)  Moreover, during prosecution of the '749 patent, Hydro distinguished the apparatus of the Gross application on the basis that the top surface of the Gross apparatus was not impervious, as Gross disclosed a steep "ramp structure" where the top surface included a grill placed over diverter canals that were arranged to collect substantially all of the fluid and debris that passes through the grill.  (Gross Application at 2, ¶¶ 0035, 0041-43, Hydro's Reply Br. Ex. P; 6/21/04 Interview Summary, Petter's Resp. Br. Ex. G.)

Although Petter now asserts that its wash racks are not impervious, this position is contrary to its prior admissions that its water channel wash racks have an impervious surface.  For example, Matthew Petter admitted that wash fluid and dirt removed from a vehicles falls to the impervious surface of the Petter wash rack and is directed to the side trough through water channels.  (Petter Dep. at 205-08.)  John Goodell, Petter's engineer, similarly testified that he checks the "fit and function" of Petter's water channel wash racks to "make sure that there's no leak pass between tacks, troughs, wall skins, to make sure no water is actually hitting the floor."  (Goodell Dep. at 16-18, Hydro's Reply Br. Ex. Q.)  In other words, Goodell makes sure that the top of the pad is impervious and does not permit anything to fall straight through.  (*Id.* at 18-19.)  Moreover, Petter advertises its portable wash racks as impervious.[1]  (Petter's Website, Hydro's Reply Br. Ex. T, http://www.riveer.com/products.html ("Water tight connections"); Ex. U, http://www.riveer.com/products/wash-racks.html ("Riveer wash racks have a built-in 3" slope sending all water and mud to the side collection trough."); Ex. V, http://www.riveer.com/products/wash-racks/steel.html ("100% water tight").

---

[1] Petter does business as "Riveer Environmental."

11

Finally, Petter's argument fails because all of the claim limitations at issue generally recite an "impervious top" or an "imperious surface." Petter's argument, on the other hand, is not that the top surface is not impervious, but that its wash rack is not impervious due to a gap on the underside of the impervious top. Regardless, this defect does not make the top impervious. Moreover, the fact that Petter's wash rack may leak, thus defeating its watertight design, does not save it from infringement because "inefficient infringement is still infringement." *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 859 (Fed. Cir. 1988). Finally, as Hydro's evidence demonstrates, Petter's water channel wash racks are substantially impervious.

## 2. Accommodate Immediate Flow.

Petter next argues that its wash rack does not meet the "accommodate immediate flow" limitation of claim 1 because "customers have to use outside instruments to manually force debris and cleaning liquid off the pad." (Petter Resp. Br. at 7.) This argument fails because nothing in the '591 patent suggests that the sloped grooves must be the sole means of causing liquid and debris to flow to the side trough. Again, construction of this term is unnecessary. The term accommodate is synonymous with "aid, assist, help, [or] abet." *Random House Dictionary of the English Language* 12 (2d ed. 1987). Thus, the function of the sloped grooves is merely to aid or facilitate the flow of liquid and debris. This conclusion is confirmed by the written description, which states that "[c]ontaminants, solids, and debris washed from the item . . . may be washed from the surface with additional wash fluid" and "[t]he flow channels can be easily cleaned without disassembly." ('591 patent Col. 4, ll. 1-4; Col. 2, ll. 62-63.) Similarly, the written description confirms that "the washing equipment can easily be used to wash off solids that might remain on the surface." (*Id.* Col. 6, ll. 26-27.)

Petter's water channel wash racks meet this limitation because Petter admits that the water channels serve to stop the water from flowing off the front or back of the trough and direct it to the side trough. (Petter Dep. at 205-208.) The water channels thus accommodate immediate flow of cleaning liquid and debris, as required by claim 1. Thus, the fact that Petter customers use additional means to clean liquid and debris off the pad is insufficient to avoid a finding of infringement.

### 3. Undulating Surface.

Petter finally argues that its water channel wash pads do not infringe because they lack an "undulating" surface. As the Court noted in its September 8, 2009, Opinion, the parties agree that "undulating" means "wave-like." (Docket no. 277 at 9.) Petter provides scant analysis for this argument, but it appears to be that Petter's wash pad surface is not undulating because the entire top is not wave-like. While this might not be required, the bases of the parties' arguments are not entirely clear. The Court thus believes that oral argument on this issue would be helpful.

Accordingly, at this time, Hydro is entitled to summary judgment on its claim of direct infringement only with regard to claim 15 of the '591 patent.

### B. Contributory Infringement of the '749 Patent

Hydro asserts that Petter contributes to the infringement of the '749 patent through its sale of wash pads with and without water channels. Under 35 U.S.C. § 271(c), a party is liable for infringement if it "offers to sell or sells within the United States . . . a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." Thus, to establish contributory infringement, Hydro must show that (1) Petter's customers directly infringed the asserted claims of the '749 patent; (2) Petter sold a material component used in practicing the

13

patented method; (3) Petter knew the item was especially made or adapted to practice the patented method; and (4) the item sold was not a staple or article or commodity in commerce suitable for substantial noninfringing use. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

Petter contends that Hydro cannot establish direct infringement or Petter's knowledge or intent to infringe. Both arguments lack merit.

First, regarding direct infringement, Petter again asserts that its water channel wash racks are not impervious. This argument fails for the reasons cited above. Petter also contends that Hydro cannot establish direct infringement because its customers perform an extra step and independently cause the debris and cleaning fluid to flow into the trough after the customer finishes washing the vehicle. This argument is similar to Petter's argument regarding the "accommodating immediate flow" limitation addressed above.

Petter's argument that the washing and removal of liquid and debris must occur contemporaneously is not supported by the language of either claim 2 or claim 3. Claim 2 specifies three steps: (1) placing a debris-ladened vehicle on the flat wash pad; (2) washing solid debris from the vehicle onto the top impervious surface of the wash pad; and (3) causing the solid debris and wash liquid to flow across the top surface into the side trough for removal. Claim 3 similarly provides for (1) placing a debris-carrying vehicle on the wash pad; and (2) using liquid to remove debris from the vehicle, such that liquid and debris are displaced first, onto the wash pad, and second, substantially horizontally across but not through the wash pad and into the side trough.

Nothing in either claim suggests that the steps of washing the vehicle and causing the debris and liquid to flow across the pad must occur at the same time. Nor do the claims suggest that the wash pad must be the sole cause of the flow of debris and liquid across the pad and into the side

14

trough. In fact, the patent itself says that "the washing equipment can easily be used to wash off solids that might remain on the surface." ('749 patent Col. 6, ll. 27-28.) Moreover, Petter fails to cite any authority to support its assertion that two method steps recited close to one another in a claim must be performed simultaneously. Finally, statements that Hydro made during prosecution of the '591 patent regarding the prior art Gross reference fail to support Petter's argument. The comments of Hydro's counsel do not relate to claim language common to both the '591 patent and the '749 patent. *See Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004). In addition, the comments are not sufficiently clear such that they indicate an express disclaimer by Hydro. *See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009). In short, nothing in the prosecution history suggests that the removal of debris from the wash pad must be done at the same time as the washing process or solely by means of the wash pad.

Petter also contends that Hydro has failed to establish that no genuine issue of material fact remains with regard to Petter's knowledge that its wash pads infringe. Petter argues that Hydro cannot establish knowledge because Petter developed, and in many cases sold, its water channel wash racks before Petter received Hydro's letters advising Petter of the patents at issue. Petter further contends that even after receipt of the letters, Petter believed that its products did not infringe, thus precluding summary judgment on this issue. Petter's arguments must be rejected. First, as noted by Hydro, Petter's pre-patent sales are irrelevant to the instant motion because it is undisputed that Petter sold water channel wash pads both before and after the date of the '749 patent. Second, contributory infringement requires only a finding that the defendant had knowledge that his activity causes infringement, not that the defendant intended to cause infringement. *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("[O]nly proof of a defendant's knowledge, not intent, that his activity cause[s] infringement was necessary to establish

15

contributory infringement."). Moreover, Petter's subjective intent is irrelevant. "All that is required for a finding of contributory infringement is (1) knowledge of the activity that is alleged to be infringing . . . , and (2) knowledge of the patent." *Sandisk Corp. v. Lexar Media, Inc.*, 91 F. Supp. 2d 1327, 1335 (N.D. Cal. 2000) (citing *Hewlett-Packard Co.*). In *Sandisk Corp.*, the court held that the defendant's subjective belief that it did not infringe was irrelevant, in light of the undisputed evidence that it was aware of both the patent and the allegedly infringing activity. *Id.* Here, as in *Sandisk*, it is undisputed that Petter was aware of the '749 patent and that its wash pads were designed and intended to be used according to Hydro's patented method.

## C. Induced Infringement of the '749 Patent

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." In order to establish a claim of inducement, a plaintiff must show that: (1) there has been direct infringement; and (2) that the alleged infringer knowingly induced infringement and had the specific intent to encourage another to infringe. *See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Intent may be shown either through direct or circumstantial evidence. *See Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988).

For the reasons set forth above, there is no genuine issue of material fact that Petter's customers directly infringe claims 2 and 3 of the '749 patent when using Petter's side trough wash pad. The sole issue is whether Petter knowingly and specifically intended to encourage its customers to infringe.

Specific intent for purposes of inducement "may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting the infringement." *Richo Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008). In

16

*DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293 (Fed. Cir. 2006), the Federal Circuit held that "if an entity offers a product with the object of promoting its use to infringe, as shown by clear expression or other affirmative steps taken to foster infringement, it is then liable for the resulting acts of infringement by third parties." *Id.* at 1306.

While Hydro's evidence is sufficient to support a claim for inducement of infringement, the Court has concerns whether no genuine issue of material fact remains regarding Petter's intent to induce infringement. A claim of inducement in violation of 35 U.S.C. § 271(b) requires more than that the defendant had the "intent to cause the acts that produce direct infringement." *Id.* Rather, "the inducer must have an affirmative intent to cause direct infringement." *Id.*

It is undisputed that Petter received written notice on two occasions that its use of side trough wash pads infringed the claims of the '749 patent. Petter also admits that its wash pads were designed to operate in the same manner as the patented method. (Petter Dep. at 184-86, 205-208.) Moreover, Petter has neither argued nor shown that its side trough wash pads have any substantial noninfringing use. On the other hand, Petter has presented testimony that it believed that its wash pads did not infringe, thus, it lacked the specific intent to cause infringement.

While the Court believes that Petter's evidence creates an issue of fact sufficient to avoid summary judgment, it believes that oral argument will assist it in making a final determination of the issue. Therefore, the Court will defer ruling on Hydro's inducement of infringement claim until after it has heard oral argument.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant in part Hydro's Motion for Summary Judgment of Infringement that: (1) Petter's water channel side trough wash pads directly infringe

claim 15 of the '591 patent; and (2) Petter contributorily infringes claims 2 and 3 of the '749 patent based on its sales of side trough wash pads.

The Court will defer ruling on whether Petter directly infringes claim 1 of the '591 patent and whether a genuine issue of material fact remains on the inducement of infringement claim pending oral argument.

An Order consistent with this Opinion will be entered.


Dated: October 6, 2009                             /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                     UNITED STATES DISTRICT JUDGE